# In the United States Court of Federal Claims

No. 20-1185
Filed: April 29, 2022

|  |  |
|---|---|
| AVANT ASSESSMENT, LLC, | ) )  ) |
| *Plaintiff*, | ) ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) ) |
| *Defendant.* | ) ) ) |

*Dirk D. Haire* and *Kristen W. Broz*, Fox Rothschild LLP, Washington, D.C., for Plaintiff.

*Daniel B. Volk*, Senior Trial Attorney, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., with whom were *Brian M. Boynton*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Patricia M. McCarthy*, Assistant Director, for the Defendant. *Major Sherod L. Davis, Sr.*, U.S. Army Legal Services Agency, *of counsel*.

## **OPINION AND ORDER**

**MEYERS, Judge.**

Avant Assessment, LLC made foreign language testing materials for the U.S. Army to use to gauge the proficiency of its linguists. The Army terminated Avant's contracts for default, which Avant successfully challenged at the Armed Services Board of Contract Appeals ("ASBCA"), which ordered the terminations to be converted to terminations for convenience. Following the ASBCA's order, Avant submitted claims for termination damages and went back to the ASBCA to recover these claimed damages after the contracting officer denied the claims. But Avant sought relief different than it sought from the contracting officer, and the ASBCA dismissed much of Avant's claims for lack of jurisdiction but did enter judgment on the claims over which it had jurisdiction. Avant then submitted new claims to the contracting officer and has appealed their denial to this Court.

The Government moves to dismiss, arguing claim preclusion bars Avant's claims because, according to the Government, Avant could have and should have brought these claims as part of the ASBCA litigation. While the Government is correct that claim preclusion bars a significant portion of the Complaint, it does not bar Avant's claims under the Uniform Commercial Code ("UCC") because Avant did not and could not have known the essential facts to establish those claims when it submitted its claims to the contracting officer that led to the

ASBCA litigation. Therefore, the Court grants-in-part the Government's motion to dismiss insofar as it seeks dismissal of the Complaint as to Counts I-III, VII, and VIII, and denies the motion insofar as it seeks dismissal of Counts IV-VI. These Counts are adequately pled and survive the motion to dismiss. The Court also denies the Government's motion to transfer this action to the ASBCA.

I.  **Background**

In 2010 and 2011, Avant and the U.S. Army entered a series of contracts for Avant to provide foreign language proficiency tests. ECF No. 1 ¶ 18. The contracts at issue are Contract Nos. W9124N-11-C-0015 ("Contract 15"), W9124N-11-C-033 ("Contract 33"), and W9124N-11-C-0109 ("Contract 109") (collectively the "Contracts"). *Id*. ¶ 5.

The Contracts required Avant to deliver thousands of "acceptable" test items to the Defense Language Institute ("DLI") so that DLI could use these items to assess the foreign language proficiency of military linguists. ECF No. 1-4 at 6[1]; ECF No. 1-5 at 9; ECF No. 1-6 at 11; *see also* ECF No. 1 ¶¶ 24, 26, 28. The Contracts also memorialize an understanding that the parties anticipated a high rejection rate for Avant's testing materials, providing that the rejection rate would likely be between 30-60%. ECF No. 1-4 at 8 (¶ C.6.1.2); ECF No. 1-5 at 14 (¶ C.6.10.1); ECF No. 1-6 at 14 (¶ C.5.2.2.2). The Government did, in fact, reject a significant number of test items that Avant submitted for approval. ECF No. 1 ¶¶ 50-51.

The Government only had to pay for the items it accepted but retained all intellectual property rights in both accepted and rejected items. *Id*. ¶¶ 33-34. The Contracts provide the Government "sole ownership and exclusive rights to all deliverables . . . ." *Id*. ¶ 34 (quoting ECF No. 1-4 at 12 (¶ C.8.1.1); ECF No. 1-5 at 14 (¶ C.6.11.2); ECF No. 1-6 at 16 (¶ C.6.12.2)). But the Contracts do not define what constitutes an "acceptable" item; they only provide that "[t]he Contractor shall follow the test specifications provided by [the Defense Language Institute Foreign Language Center]." *Id*. ¶¶ 36-37.

During performance, the Parties did not see eye to eye on how the Contracts were going. In 2013, the Government terminated the Contracts for cause because Avant failed to "timely perform" or failed to "deliver the required number of acceptable items." *Id*. ¶ 72. Avant challenged the Government's terminations for cause at the ASBCA, seeking to have the terminations converted to terminations for convenience. *Id*. ¶ 82. The ASBCA agreed with Avant and ordered the terminations converted to terminations for convenience. *Id*. ¶ 6; *see also* ECF Nos. 1-1 at 2; 1-2 at 2; and 1-3 at 7. Further, the ASBCA concluded that "Avant is entitled to recover under FAR § 52.212-4(l), in the context of a termination for convenience settlement proposal[ ] to be presented to the contracting officer." ECF No. 1 ¶ 86 (quoting ECF No. 1-3 at 5-6).

In June and August 2016, Avant submitted its settlement proposals to the contracting officer. *Id*. ¶¶ 87-89. In these proposals, Avant claimed that the Army had constructively

---

[1] Avant includes the Contracts as exhibits to the Complaint. The Court may consider items incorporated into the Complaint without converting the Government's RCFC 12(b)(6) motion into one for summary judgment. *E.g.*, *Andrews v. United States*, 153 Fed. Cl. 665, 670 (2021).

accepted the "rejected" test materials and that the materials met the acceptance standards. *Id*. ¶ 93.  The Army, however, did not engage with Avant on these proposals and Avant appealed the Army's deemed denial of its claims to the ASBCA.  *Id*. ¶¶ 91-92.

During the ASBCA litigation, Avant asserted claims that the Government had constructively accepted its rejected testing materials by retaining them or had improperly rejected them.  Because these claims were not presented to the contracting officer, the ASBCA held that it lacked jurisdiction over these claims "because those claims are based upon operative facts that were not already presented in the 2016 claims that are the subject of these appeals."  ECF No. 1-11 at 3.  Avant did not appeal the ASBCA's decision, which became final.

Avant then submitted supplemental settlement proposals and certified claims for each of the Contracts.  ECF No. 1 ¶¶ 95-98.  These supplemental proposals put forward the claims that the ASBCA had dismissed for lack of jurisdiction and added new claims for the test items that the Army formally rejected but then used.  According to Avant, this means the Army constructively accepted these materials under UCC § 2-606(1).  *Id*. ¶¶ 95-98; *see also* ECF Nos. 1-12, 1-13, 1-14.  Avant's supplemental proposals were deemed denied on September 13, 2019, ECF No. 1 ¶ 99, and Avant timely filed this action.

## II.     Legal Standard

"'A motion to dismiss . . . for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the plaintiff do not entitle him to a legal remedy.'" *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327 (Fed. Cir. 2006) (quoting *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000)).  As the Supreme Court explained, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  And to be "plausible on its face," it "does not need detailed factual allegations." *Twombly*, 550 U.S. at 555; *see also Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (Rule 8 "does not require the plaintiff to set out in detail the facts upon which the claim is based, but enough facts to state a claim to relief that is plausible on its face").  In other words, the complaint must contain enough detail "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).  "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir. 1998) (citations omitted).  Nevertheless, the Court "must assume all well-pled factual allegations are true and indulge in all reasonable inferences in favor of the nonmovant." *United Pac. Ins. Co.*, 464 F.3d at 1327-28 (quoting *Anaheim Gardens v. United States*, 444 F.3d 1309, 1314-15 (Fed. Cir. 2006)).

A Rule 12(b)(6) dismissal may be appropriate based on an affirmative defense such as claim preclusion. *Larson v. United States*, 89 Fed. Cl. 363, 382 (2009), *aff'd*, 376 F. App'x 26 (Fed. Cir. 2010).  "Affirmative defenses that have been considered under a Rule 12(b)(6) motion to dismiss include, among others, 'various types of estoppel' and 'the barring effect of [claim preclusion].'" *Corrigan v. United States*, 82 Fed. Cl. 301, 304 (2008) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2008)).  "As claim preclusion rests on a final judgment on the merits, it can quite properly and naturally be raised

via a merits-based RCFC 12(b)(6) motion." *Chisolm v. United States*, 82 Fed. Cl. 185, 193 (2008), *aff'd*, 298 F. App'x 957 (Fed. Cir. 2008) (citations omitted).

### III.   Discussion

In Counts I-III, Avant seeks damages under FAR § 52.212-4(l) for the Government's termination of the Contracts and subsequent refusal to pay termination for convenience damages. ECF No. 1 ¶¶ 1, 101-07 (Count I), 108-14 (Count II), 115-21 (Count III).  In Counts IV-VI, Avant seeks damages under UCC § 2-606(1) based on the Government's implied acceptance of items that Avant provided to the Government that the Government rejected but then used without paying Avant.  *Id.* ¶¶ 2, 122-28 (Count IV), 129-35 (Count V), 136-42 (Count VI).  In Count VII, Avant seeks damages via a theory of equitable estoppel.  *Id.* ¶¶ 3, 143-50.  And in Count VIII, Avant seeks a Declaratory Judgment covering the percentage of work that it performed before the Government's notice of termination of the Contracts.  *Id.* ¶¶ 4, 151-58.  Both Count VII and VIII relate to Avant's claimed termination for convenience claims.

According to the Government, "[l]itigation as to what compensation Avant is due under the contracts' termination for convenience clause is over.  It ended when the ASBCA's October 3, 2018 decision became final.  Claim preclusion bars any further attempts to re-litigate this matter." ECF No. 9 at 8.  The Government is largely correct.  But Avant's UCC claims (Counts IV-VI) survive the motion to dismiss.

#### A.   Claim Preclusion

"[T]he doctrine of res judicata provides that when a final judgment has been entered on the merits of a case, '[i]t is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" *Nevada v. United States*, 463 U.S. 110, 129-30 (1983) (quoting *Cromwell v. Sac Cty.*, 94 U.S. 351, 352 (1876)) (second alteration in original).  Res judicata includes the related doctrines of claim preclusion and issue preclusion.  *E.g.*, *First Mortg. Corp. v. United States*, 961 F.3d 1331, 1338 (Fed. Cir. 2020).  Issue preclusion prohibits a losing party from relitigating issues that have actually been litigated.  *E.g.*, *Sharp Kabushiki Kaisha v. ThinkSharp, Inc.*, 448 F.3d 1368, 1370 (Fed. Cir. 2006) ("Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided.") (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984)).  The related doctrine of "[c]laim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Id.*  "In essence, [claim preclusion] operates to give a party one, and only one, full and fair opportunity to litigate its matter." *Bowers Inv. Co., LLC v. United States*, 695 F.3d 1380, 1384 (Fed. Cir. 2012) (citing *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)).

For claim preclusion to apply, there must be: "(1) an identity of parties or their privies, (2) a final judgment on the merits of the first suit, and (3) the later claim to be based on the same set of transactional facts as the first claim such that the later claim should have been litigated in the prior case." *Id.* (citing *Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed. Cir. 2003)). The Parties do not dispute that the first element is met (these are the same plaintiff and defendant

as were before the ASBCA).  Thus, the Court focuses its analysis on the second and third elements.

1. The ASBCA litigation resulted in a final judgment.

Avant argues that because the ASBCA did not enter a final judgment on the merits of the claims presented in its Complaint, claim preclusion does not apply.  ECF No. 10 at 1-3.  In 2018 the ASBCA dismissed Avant's constructive acceptance claims and improper rejection claims—which are before the Court now—because the ASBCA held it lacked jurisdiction over them.  ECF No. 1-11 at 5.  The ASBCA held that "[w]e possess jurisdiction to entertain none of Avant's Prong 1 claims, because those claims are based upon operative facts that were not already presented in the 2016 claims that are the subject of these appeals." *Id.* at 3.  Thus, Avant argues that the ASBCA's ruling "was not a final judgment on the merits *of the claims at issue in the Complaint*" and the claims presently before the Court cannot be barred by claim preclusion.  ECF No. 10 at 8 (emphasis added).

While Avant's argument would be relevant to, indeed dispositive of, an argument for *issue preclusion*, which requires the specific claim to have been litigated, it does not respond to the Government's *claim preclusion* argument.  Again, "[c]laim preclusion refers to the effect of a judgment in *foreclosing litigation of a matter that never has been litigated*, because of a determination that it should have been advanced in an earlier suit." *ThinkSharp*, 448 F.3d at 1370 (emphasis added).  And when claim preclusion applies, the "final judgment on the merits of [the prior] action precludes the parties or their privies from relitigating issues that *were or could have been raised* in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) (emphasis added).  As the Government puts it, "the applicability of claim preclusion does not depend on establishing that the prior action resulted in a final judgment as to identical issues or identical claims." ECF No. 11 at 2 (citing *Bowers*, 695 F.3d at 1383-84).  Therefore, Avant's contention that the ASBCA did not enter judgment on the claims in this case does not change the analysis.  The ASBCA reached a final judgment, satisfying the second element of claim preclusion.

2. Avant could have brought most, but not all, of its claims in the prior action before the ASBCA.

The final question for this Court is whether Avant could have and should have brought its current claims in the ASBCA litigation. *Bowers*, 695 F.3d at 1384 ("[T]he Court of Federal Claims did not err in holding that . . . the claims now raised arose from the same transactional facts and the same Lease contract, and could have been and should have been raised in the prior proceeding.").  In most cases, the Court presumes that "claims under a single contract generally must be brought together." *Phillips/May Corp. v. United States*, 524 F.3d 1264, 1271 (Fed. Cir. 2008) (citing 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4408 (2d ed. 2002)).  In other words, "the general rule [is] that all claims arising out of the same contract constitute the same claim for purposes of res judicata." *Id*. at 1273.  But Avant may overcome this presumption "by showing that the claims are unrelated." *Id*. at 1272 (citations omitted).  According to the Circuit, "'if the claims . . . will necessitate a focus on a different or unrelated set of operative facts as to each claim, then separate claims will exist.'" *Id*. (quoting *Placeway Constr. Corp. v. United States*, 920 F.2d 903, 907 (Fed. Cir. 1990)).  In

deciding whether Avant's claims here involve the same transactional facts as its ASBCA litigation, the Court must approach the analysis "pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* at 1271 (quoting Restatement (Second) of Judgments § 24(2) (1982)).

><br>
>*a)      Avant's termination for convenience damages.*

The record indicates that Avant was fully aware of all its FAR § 52.212-4(l), equitable estoppel, and declaratory judgment[2] claims prior to submission of its initial settlement proposals. This includes the improper rejection claims that Avant now brings before this Court in Counts I-III.  Indeed, Avant conceded as much during argument, stating that the "improper rejection argument was preexisting" the ASBCA litigation.  ECF No. 18 at 29:16.  Despite this knowledge, Avant failed to aggregate all its claims together when submitting its initial settlement proposals to the contracting officer.

Because Avant had not presented these claims to the contracting officer, the ASBCA held that "Avant's constructive acceptance claims and improper rejection claims are dismissed for lack of jurisdiction." ECF No. 1-11 at 5.  The ASBCA found that it "possess[ed] jurisdiction to entertain none of Avant's . . . [constructive acceptance claims and improper rejection] claims, because those claims are based upon operative facts that were not already presented in the 2016 claims that are the subject of these appeals." *Id*. at 3.

When Avant appealed the contracting officer's denial of its initial settlement proposals, the Contract Disputes Act ("CDA"), limited the ASBCA's jurisdiction to only the claims Avant had submitted to the contracting officer.  41 U.S.C. § 7103(a).  As a general matter, a dismissal for lack of subject matter jurisdiction in the first action generally does not support claim preclusion in subsequent actions.  *E.g.*, *Vink v. Hendrikus Johannes Schijf Rolkan N.V.*, 839 F.2d 676, 677 (Fed. Cir. 1988) (citing *Prakash v. Am. Univ.*, 727 F.2d 1174, 1181-82 (D.C. Cir. 1984)).  But here the jurisdictional defect before the ASBCA was solely due to Avant's failure to submit all its claims to the contracting officer at one time.  Under the CDA, Avant was in full control of the ASBCA's jurisdiction and, as the Federal Circuit explained, "Congress definitively rejected the idea that the CDA was abrogating the doctrine of claim preclusion and permitting the splitting of claims based on the same set of transactional facts." *Phillips/May*, 524 F.3d at 1270.  In other words, Avant may not submit some, but not all, of its claims to the contracting officer and proceed to piecemeal litigation of its claims through selectively creating or limiting ASBCA's or this Court's jurisdiction over its claims.  Avant was "obligated to prosecute its claims in the same proceeding [and cannot] avoid the application of [claim preclusion] through strategic delay." *Id.* at 1271.  Avant's termination claims here involve the same transactional facts as those before the ASBCA and Avant offers no reason why it could not have presented them to the contracting officer in its initial settlement proposals, thereby bringing all of its claims

---

[2] "Declaratory judgment" may be a confusing term in this context.  Avant seeks a declaration incident to a final judgment under 28 U.S.C. § 1491(a)(2), not a declaratory judgment under the Declaratory Judgment Act (which this Court lacks jurisdiction to issue).  *See* ECF No. 1 ¶ 154. But the Court uses this term because it is the term Avant uses.

at one time. Claim preclusion, therefore, bars Avant from bringing its FAR § 52.212-4(l), equitable estoppel, and declaratory judgment claims. Avant gets no second bite at the apple in this Court. *See Bowers*, 695 F.3d at 1383-85; *Phillips/May*, 524 F.3d at 1270-73.

                          b)        *Avant's UCC claims.*

       While claim preclusion bars Avant's termination for convenience damages claims, it does not bar Avant's UCC claims because these claims require the Court to focus on a different set of facts unrelated to the termination for convenience claims. *See Phillips/May*, 524 F.3d at 1272. According to Avant, it is entitled to recover the value of the test materials the Government purportedly rejected because the Government used those materials and thereby accepted them. Under UCC § 2-606, the Government accepts the testing materials when it "does any act inconsistent with the seller's ownership." As the Court of Claims explained, "[t]he most common act which falls under this provision is the retention and use of the goods by the buyer." *John C. Kohler Co. v. United States*, 498 F.2d 1360, 1367 (Ct. Cl. 1974) (citations omitted). And if the Government accepted the testing materials, it must pay for them. UCC § 2-607; ECF No. 1-4 at 4 (Section B); ECF No. 1-5 at 3 (Section B); ECF No. 1-6 at 3 (Section B). Therefore, Avant's UCC claims are based on the Government's post-rejection conduct—its retention *and use* of the testing materials—and necessarily involve a substantially different set of facts than are relevant to the termination for convenience claims.

       And, most importantly, Avant plausibly argues that it could not have included these claims in its initial settlement proposals that were at issue before the ASBCA because it could not have known the essential facts—*i.e.*, the Government's post-rejection use—at the time it submitted the proposals to the contracting officer. According to Avant, it was not until it was in discovery in the ASBCA case that it "discovered that [the Army] had actually done something with the items that they controlled. . . . We weren't aware that [the Army] had actually kept possession and then transferred the items to a third party for presumably, you know, manipulation and use." ECF No. 18 at 27:14-19. Without this information, there could be no UCC claim. And Avant did ask the ASBCA to stay its proceedings so that it could correct any jurisdictional issues but the ASBCA went ahead with the case before it. *Id*. at 15:7-16:6. Assuming these facts to be true, as the Court must at this stage, the Court agrees that Avant could not have included the UCC claims in its prior litigation because the knowledge of essential facts to establish the claim were within the exclusive knowledge of the Government.

       Avant's UCC claims are somewhat like the facts in *Bowers*. There, the plaintiff brought a claim to recover amounts it claimed to be owed by the Government under a lease agreement with the FAA for office and warehouse space in Alaska. *Bowers*, 695 F.3d at 1382. Under the lease, the Government was required to pay Bowers rent each month for the month just ended—*i.e.*, "in arrears." *Id*. After the termination of the lease, Bowers filed a claim seeking $82,203.72 for "compensation for the final month's rent, and other claims relating to damage to the property." *Id*. The contracting officer denied Bowers' claim, and Bowers brought an action in the Civilian Board of Contract Appeals ("CBCA"). *Id*. Bowers then claimed that based on payment records the Government produced in the CBCA litigation, it learned that it had not been paid several months' rent. *Id*. According to Bowers, "[d]uring litigation before the CBCA, [it] became aware that the first three months of the lease had never been paid" and sought leave from the CBCA to amend its claim. *Bowers Inv. Co., LLC v. United States*, 104 Fed. Cl. 246, 250

(2011) (citations and internal quotation marks omitted).  The CBCA denied Bowers' request stating that: "'[f]or us to agree with Bowers' argument would require our acceptance of a scenario under which one or more of the first three payments commencing January 1994 were not made and Bowers did not complain in writing or otherwise regarding the FAA error.'"  *Bowers*, 695 F.3d at 1382 (quoting *Bowers Inv. Co., LLC v. Dep't of Transp.,* CBCA 1196, 09–2 BCA ¶ 34, 238).  In essence, the CBCA rejected Bowers' allegation that it only learned of the first three months' unpaid rent during litigation.  Bowers then submitted new claims to the contracting officer for the newly discovered unpaid rents.  *Id*.  The contracting officer denied these two new claims and Bowers brought its action in this Court.  *Id*.  Judge Hewitt held that claim preclusion barred the two claims that Bowers submitted to the contracting officer on January 27, 2010, because these two claims could and should have been addressed in the first proceeding.  *Bowers*, 104 Fed. Cl. at 259-260.  The Federal Circuit affirmed.  *Bowers*, 695 F.3d at 1385.

But *Bowers* is distinguishable because there the plaintiff possessed all the records of what it got paid in rent every month, making it patently obvious that it could not have learned of the unpaid rent for the first time during litigation.  Here, Avant's argument that it did not know about the Government's use of the rejected testing materials is exceedingly plausible.  There is nothing in this case to impute such knowledge to Avant.  The Government had the exclusive knowledge of what it did with Avant's test materials after rejecting them.  If Avant had any ability to monitor the Government's use of rejected materials, the Government hasn't identified it.  And there was certainly nothing here akin to the knowledge that defeated the claim in *Bowers*— whether Bowers itself had been paid nearly $60,000.

The Court thus finds that Avant's UCC claims are based on different operative facts that became known during the ASBCA litigation.  Avant could not have included its unknowable UCC claims in its initial termination for convenience settlement proposals that were before the ASBCA.  Of course, if Avant could not include these unknown UCC claims in its initial proposals, it follows that there is nothing to support a finding that Avant should have done so.  Claim preclusion does not bar the UCC claims.

**B.    Transfer to the ASBCA.**

The Government alternatively moves for transfer of this case to the ASBCA.  ECF No. 9 at 18.  The CDA provides that this Court may transfer "actions arising from one contract" to a board of contract appeals "for the convenience of parties or witnesses or in the interest of justice."  41 U.S.C. § 7107(d).  Avant opposes transfer because it does not believe the transfer would be for its convenience or in the interest of justice.  ECF No. 10 at 13-15.  And Avant argues that the CDA only allows the Court to transfer actions to a board if there is a related case "concurrently pending" before that board.  *Id*. at 13 (quoting *Rockwell Automation, Inc. v. United States*, 70 Fed. Cl. 114, 126 (2006); *see also id.* (citing *Palafox St. Assocs., L.P. v. United States*, 122 Fed. Cl. 18, 35 (2015)).  While the parties extensively debate whether the CDA requires there to be a related case concurrently pending before the ASBCA for this Court to transfer a case there, this Court need not resolve that issue because the CDA is clear that any transfer is discretionary: "[T]he United States Court of Federal Claims *may* . . . transfer any actions to or among the agency boards involved."  41 U.S.C. § 7107(d) (emphasis added).

There is nothing indicating that transfer would be for the convenience of the parties. While the Government would prefer to litigate in the ASBCA, Avant does not. ECF No. 10 at 13. And given that Avant's UCC claims address a different series of operative facts than the claims that the ASBCA previously resolved, there does not appear to be any efficiency gained by having the ASBCA resolve these new allegations rather than this Court. Given the circumstances of this case, the Court declines to transfer it to the ASBCA.

**IV.    Conclusion**

For the foregoing reasons, the Court grants-in-part and denies-in-part the Government's motion to dismiss, ECF No. 9. The Court denies the motion to dismiss insofar as it seeks dismissal of Counts IV-VI (Avant's UCC claims) and grants it as to the rest of the Complaint. And the Court denies the motion insofar as it seeks to transfer this case to the ASBCA.

**IT IS SO ORDERED.**

<u>s/ Edward H. Meyers</u><br>
Edward H. Meyers<br>
Judge